**PHILLIPS, GOLDMAN & SPENCE, P.A.**
ATTORNEYS AT LAW
PENNSYLVANIA AVE. AND BROOM ST.
1200 N. BROOM STREET
WILMINGTON, DE 19806

JOHN C. PHILLIPS, JR.
STEPHEN W. SPENCE
ROBERT S. GOLDMAN
LISA C. MCLAUGHLIN
JAMES P. HALL

DAVID A. BILSON III                  (302) 655-4200 (P)

STEPHEN A. SPENCE                  (302) 655-4210 (F)
E. ASHLEY TUCKER
MEGAN C. HANEY



REDACTED - PUBLIC VERSION

March 22, 2011

<u>**VIA CM-ECF AND HAND DELIVERY**</u>

The Honorable Sue L. Robinson
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3568

>    Re:    *Pronova BioPharma Norge AG v. Teva Pharmaceuticals USA, Inc.*, C.A. No. 09-286-SLR-MPT, *Pronova BioPharma Norge AS v. Apotex Corp. et al.*, C.A. No. 09-304-SLR-MPT, *Pronova BioPharma Norge AS v. Par Pharmaceutical, Inc., et al.*, C.A. No. 09-305-SLR

Dear Judge Robinson:

I write on behalf of all Defendants in the above-captioned matters in response to Pronova's March 18, 2011 Letter (D.I. 197) ("March 18 Letter"). For the reasons set forth below, Defendants respectfully request that the Court: (i) preclude Dr. Kane from testifying as to opinions expressed in his tardy Supplemental Report; (ii) preclude Pronova from introducing prosecution history documents as evidence of "unexpected results"; and (iii) preclude Dr. Sawchuk from presenting testimony regarding his signal to noise theory.

**I.     DR. KANE'S TARDY SUPPLEMENTAL REPORT**

Dr. Kane submitted three timely expert reports: an Initial Report on October 15, 2010; a Rebuttal Report on November 19, 2010; and finally a Responsive Report on December 22, 2010. But then on January 27, 2011 – five (5) weeks after the deadline for the service of expert reports, 14 weeks after submitting his initial report, and two (2) days before his long-scheduled deposition – Pronova served Dr. Kane's "Supplemental Report." This tardy Supplemental Report was purportedly submitted in response to Dr. Sacks' deposition testimony.

Dr. Kane's Supplemental Report is improper because there is not a single opinion in it that could not have been included in his November 19, 2010 Rebuttal Report. Furthermore – and perhaps even more importantly – the tardy Supplemental Report contains opinions that **are new and contradict** the ones contained in the November 19, 2010 Rebuttal Report. Thus, Dr. Kane should be precluded from presenting opinions included within his Supplemental Report at trial. Allowing Dr. Kane to testify regarding his Supplemental Opinions will allow Plaintiffs to benefit

The Honorable Sue L. Robinson
March 22, 2011
Page 2

from their undisputed violation of the Court's Scheduling Order, while simultaneously prejudicing the Defendants. More specifically:

## A. THE SUPPLEMENTAL OPINIONS SHOULD HAVE BEEN IN THE REBUTTAL REPORT

As Defendants explained at the Pre-Trial Conference, there was no reason that the opinions in Dr. Kane's Supplemental Report could not have been included in his Rebuttal Report. And Pronova does not – because it cannot – provide any such reasons in its March 18 Letter to the Court. (*See* March 18 Letter at 4). Instead, Pronova states that because ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮. March 18 Letter at 1-2. This argument fails for several reasons.

**First**, as a threshold issue, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮, and claim 1 of the '077 patent specifically calls for "[a] **method for the treatment or prophylaxis of hypertriglyceridemia in a human patient....**" (*See* '077 Pat., Claim 1) (emphasis added). Thus, in light of the language recited in patent claims at issue, the argument that Pronova was not on notice that Dr. Kane could discuss ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ in his Rebuttal Report is not credible.

**Second**, Dr. Sacks' October 15, 2010 Initial Report includes an ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮. *See, e.g.*, Oct. 15, 2010 Sacks Initial Report ("Sacks Initial Report") at 8. Indeed, Dr. Sacks' Initial Report specifically emphasizes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 10. Dr. Sacks then discusses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 13-20.

## B. THE SUPPLEMENTAL REPORT CONTAINS NEW AND CONTRADICTORY OPINIONS

Furthermore, the opinions expressed in Dr. Kane's tardy Supplemental Report contrast starkly with those he expressed in his Rebuttal Report. More specifically:

### 1.   Dr. Kane Changed His Opinions on the Side Effects of Other Drugs

Dr. Kane opined in his November 19, 2010 Rebuttal Report that ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nov. 19, 2010 Kane Rebuttal Report (to Par) at ¶¶ 101-127.

But in his January 27, 2011 Supplemental Report, Dr. Kane totally reversed his opinion and contended that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Jan. 27, 2011 Kane Supp. Report at ¶¶ 23-25.

Thus, Pronova's statement that "Dr. Kane provided opinions [in his Rebuttal Report] regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Honorable Sue L. Robinson
March 22, 2011
Page 3

███████████████████████████████████████████ is again unavailing.  *See* March 18 Letter at 1.



### C. PRONOVA'S CITED CASES ARE INAPPOSITE

Pronova cites several cases in defense of Dr. Kane's Supplemental Report, all of which are inapposite.  *See Smithkline Beecham PLC v. Teva Pharms. USA, Inc.* No. 04-0215, 05-536 (NLH)(JS), 2007 WL 1827208 (D.N.J. June 22, 2007) (noting that "[a]lthough the calculation...is new information, the argument is not new."); *Dow Chem. Co. v. Nova Chems. Corp.*, No. 05-737-JJF, 2010 WL 2044931 (D. Del. May 20, 2010) (holding that the disputed declarations were not "newly conceived arguments."); *Inline Connection Corp. v. AOL Time Warner Inc.*, No. CIVA 02-272 MPT et al., 2007 WL 61883 (D. Del. Jan. 8, 2007) (report at issue based upon evidence that was uncovered after the deadline for serving expert reports); *WebExchange Inc. v. FedEx Corp.*, No. 08-133-JFF, 2010 WL 299240 (D. Del. Jan. 20, 2010) (disputed subject matter of the supplemental report was elaboration of the previous report, discussed extensively among the parties, and contained in late-produced source code).

\*\*\*

Thus, for at least these reasons, Dr. Kane should not be allowed to express his "Supplemental" opinions at trial.

## II.   PURPORTED EVIDENCE OF "UNEXPECTED RESULTS"

On October 13, 2009, Defendants served Pronova with a contention interrogatory (Interrogatory #4) requesting disclosure of (i) whether Pronova would rely upon "unexpected or surprising results" as a "secondary indicia of nonobviousness" and, if so, (ii) "all facts and documents" supporting that claim and (iii) "the name of each individual whose documents or testimony Pronova intends to rely on to support that asserted secondary consideration[]."  For the next seventeen months – until this Court's admonishment at the Pre-Trial Conference on March 15, 2011 – Pronova failed to state ████████████████████████████████████████

████ ███ On March 18, 2011, Pronova revealed – for the first time – ███████████████████████████████████████████████████████████████████████████████████████████████████████

████  Defendants respectfully submit that this post-discovery revelation comes far too late and this Court should preclude Pronova from introducing these documents as evidence of "unexpected results."

The Honorable Sue L. Robinson
March 22, 2011
Page 4

Pronova's attempt to rely upon 

For this additional reason, the Court should not permit Pronova to rely upon the previously-undisclosed purported evidence of "unexpected results."

## A. PRONOVA'S DISCOVERY ABUSE

Pronova failed to adhere to the September 3, 2009 Scheduling Order, which provided that Pronova had "the burden to come forward with evidence" on issues "such as secondary considerations of nonobviousness raised by Plaintiff in its rebuttal expert reports." Pronova, however, did not come forward with evidence of unexpected results during fact discovery, and did not adduce any opinion that there were "unexpected results" during expert discovery.

Pronova submitted three entirely non-substantive responses to Defendants' interrogatory:



---

[1]     This quoted passage is the only basis for the contention in Pronova's March 18 Letter that "Pronova also specifically referred to the prosecution histories of the '077 and '667 Patents in response to Defendants' interrogatory requesting contentions of secondary considerations." March 18 Letter at 4.

The Honorable Sue L. Robinson
March 22, 2011
Page 5



Pronova's expert reports likewise failed to meet Pronova's "burden to come forward with evidence" of unexpected results. ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████ Pronova's experts limited their rebuttal reports to criticisms of Defendants' reports. At their depositions, Pronova's experts (Dr. Sawchuk and Dr. Thisted) disclaimed ███████████████████████████████████████████████████████
████████ Thus, at the close of all discovery, Pronova still had not identified any piece of evidence that it contended demonstrated "unexpected results."

## B. The Consequences Of Pronova's Discovery Abuse

Pronova argues that notwithstanding its discovery abuse, this Court is powerless to preclude introduction of these nine documents because "a district court must *always* consider *any* objective evidence of nonobviousness presented in a case." *See* March 18, 2011 Letter at 4 (quoting *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010)). Pronova's argument is wrong as a matter of law. "Under Rule 37 of the Federal Rules of Civil Procedure, a sanction for discovery abuse, including the preclusion of evidence is warranted except when a party's conduct is either substantially justified or harmless." *Praxair, Inc. v. ATMI, Inc.* 445 F. Supp. 2d 460, 469 (D. Del. 2006). The Federal Circuit, which applies regional circuit law in reviewing such sanctions, has broadly endorsed the authority of trial courts to exclude evidence as a sanction for discovery violations. *See Trilogy Communications, Inc. v. Times Fiber*, 109 F.3d 739, 744-45 (Fed Cir. 1997) ("[A]dherence to reasonable court deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines and find no reason for doing so here.").

The cases cited by Pronova for the proposition that "a patentee need not rely on expert testimony to support unexpected results demonstrated during patent prosecution" are all inapposite, because none of those cases addressed a situation where the patent holder represented that an expert would disclose the evidence of unexpected results that the patentee would rely upon. In each of those cases, the patentee explicitly disclosed particular documents in the file history contended to be evidence of unexpected results. *See SmithKline Beecham Corp. v. Apotex Corp.*, No. Civ. A-99-CV-433304, 2005 WL 941671 at *8 (E.D. Pa. Mar. 31, 2005); *Ortho-McNeil Pharm., Inc. v. Barr Labs, Inc.*, No 03-4678, 2009 WL 2182665 *7-9 (D.N.J. July 22, 2009); *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1482-84 (Fed. Cir. 1997).

---

[2]   *See* Pronova's Second Supplemental Objections and Responses To Defendants' Joint Rule 33 Interrogatory No. 4 Directed To Pronova (reciting Interrogatory and Pronova's sequential responses) (attached as Exhibit A).

The Honorable Sue L. Robinson
March 22, 2011
Page 6

The relevant caselaw, not cited by Pronova, applies four factors to determine whether evidentiary preclusion is the appropriate sanction for discovery abuse: (1) The prejudice or surprise arising from the untimely evidence; (2) The ability to cure the prejudice; (3) The extent to which allowing the violation of the scheduling order would disrupt the trial process; and (4) The proponent's bad faith or willfulness in failing to comply with the court's order. *See Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). Courts applying *Meyers* to patent cases have not hesitated to exclude evidence that was wrongfully withheld in discovery. *See Praxair*, 445 F. Supp. 2d at 469; *AstraZeneca AB v. Mutual Pharmaceutical Co. Inc.*, 278 F. Supp. 2d 491, 506-509 (D.N.J. 2003).

In *Praxair*, this Court precluded a defendant from introducing prior art references disclosed after the close of discovery – even though that reference was in the prosecution file history and was known to be a material reference. "[Defendant] had just as much reason to know of the reference as [Plaintiff.] The references were material and known, yet [Defendant] gives no reason why these references were not disclosed earlier." *Praxair*, 445 F. Supp. 2d at 469-70. Pronova clearly knew of the twenty-year old prosecution history declarations and of its intent to rely upon them, but has provided no reason for not making disclosure. This Court further rejected the argument that there was no prejudice because Defendants' disclosure of the prior art references before Plaintiff's responsive report was submitted, holding "[p]arties must not only disclose prior art references, but also their intent to rely upon them." *Id.* at 470. Here, Pronova echoes the argument rejected in *Praxair* that Defendants were not prejudiced by the lack of disclosure because they were aware of the prosecution history and "submitted initial expert reports from their statisticians and clinicians attacking the above-cited showings of unexpected results." As in *Praxair*, Pronova did not disclose its intent to rely on the documents and Defendants' expert reports did not address three of the documents that Plaintiffs now seek to rely upon – the three attorney-arguments submitted to the PTO along with the hearsay declarations.

In *AstraZeneca*, the court precluded a party from relying upon a prior art foreign patent that it did not disclose in its responses to contention interrogatories, notwithstanding the fact that the foreign patent was disclosed in other interrogatory answers. "Plaintiffs have been prejudiced because, in the absence of notice that Defendant was relying on the German '106 patent, and without notice of Defendants' supporting reasons, Plaintiff had no reason to take discovery, investigate, or include this topic in discussions with its own experts." 278 F. Supp. 2d at 506-07. Here, Pronova not only failed to disclose that it would rely upon the declaration of Dr. Drevon, it also specifically represented that it would not call him as a witness at trial and, on that basis, Defendants cancelled his deposition. *See* Exhibits B & C. As in *AstraZeneca*, "the carefully orchestrated pretrial process was designed to flush out each party's contentions during discovery, so as to allow fact discovery [and] expert opinions . . . in that order. Allowing [a party] to assert an entirely new basis . . . at the very end of the process is simply not fair to [the opposing party]." 278 F. Supp. 2d at 509.

## III.   DR. SAWCHUK'S TESTIMONY ON THE SIGNAL TO NOISE RATIO ISSUE

In its March 18 Letter, Pronova presents Defendants' Miscellaneous Issue No. 4 as whether "Dr. Sawchuk should be allowed to offer his opinion ███████████████████

6

The Honorable Sue L. Robinson
March 22, 2011
Page 7

████████████████████████████████████████████ as requested by the Court at the Pre-Trial Conference. (*See* March 18 Letter at 4 (emphasis added)). Pronova further states that Dr. Sawchuk's testimony should go forward without the contemporaneous documents because "Defendants' experts have opined on the issue of materiality." (*Id.*)

Pronova's argument must fail, however, because the Court has already recognized that ████████████████████████████████████████████████████████████████████

March 15, 2011 Pre-Trial Conference Tr. at 79:22-25; *id.* at 80:20-25.

Nothing has changed since the Pre-Trial Conference – the signal to noise ratio theory is completely speculative (in violation of Rule 602), *post-hoc*, and litigation-inspired. More specifically:

**First**, as Defendants explained at the Pre-Trial Conference, Dr. Sawchuk's "signal to noise ratio" testimony does **not** pertain to immateriality – rather, Dr. Sawchuk is improperly attempting to testify ███████████████████ which is pure speculation, *e.g.*:



(Sawchuk Rebuttal Expert Report to Apotex of November 19, 2010 at Para. 66 (D.I. 168)).

Thus, because Dr. Sawchuk's testimony would be a speculative exercise ██████████████ ████████████ all of Pronova's cited cases are inapposite. *See Bone Care Int'l LLC v. Pentech Pharm., Inc.*, No. 08-CV-1083, 2010 WL 3928598 (N.D. Ill. Oct. 1, 2010) (concerning motion to preclude expert testimony on intent; stating that first expert could not have the "expertise to plumb the inventor's and attorneys' minds and discern whether they ... had actual intent to deceive" and cautioning him to "refrain from speculating as to whether the inventor or attorneys actually had such intent"; allowable testimony was that "based on and soundly supported by documents provided by Plaintiffs, deposition testimony, and other discovery material" and "based on his review of documents provided by Plaintiffs"; precluding second expert for lack of reliability); *Research Corp. Techs., Inc. v. Microsoft Corp.*, 536 F.3d 1247 (Fed. Cir. 2008) (holding District Court committed legal error by finding patent unenforceable "based on only one prong of the two-pronged test for inequitable conduct" and "completely ignor[ing] the materiality prong"; data at issue was created after the patent application was filed, and "experiments did not attempt to test the patented invention."); *ICU Med., Inc. v. RyMed Techs., Inc.*, --- F. Supp. 2d ---, No. 07-468-LPS, 2010 WL 4780810 (D. Del. Nov. 23, 2010) (Stark, J.) (concerning order of judgment on the pleadings for failure to plead with particularity); *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570 (Fed. Cir. 1995) (inequitable conduct was raised for the first time in connection with a Rule 50(a)(1) motion, and thus there had been "no opportunity" to present evidence on materiality or intent).

The Honorable Sue L. Robinson
March 22, 2011
Page 8

**Second**, as explained at the Pre-Trial Conference, Dr. Sawchuk's speculative testimony is particularly improper for several case-specific reasons:

### 1. There Is No Contemporaneous Evidence

Pronova admits that it is unable to find any contemporaneous evidence ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This shows that Dr. Sawchuk's theory is a litigation-inspired *post hoc* theory, which is totally impermissible.[3]  *See, e.g., Cargill, Inc. v. Canbra Foods, Ltd.,* No. CV03-1209-MO, 2005 WL 3478178, at *2 (D. Or. Dec. 20, 2005) (finding inequitable conduct; concluding that "a purely *post hoc* explanation cannot negate materiality" and that an applicant cannot later explain away a failure to disclose information because this would "defeat the general purposes of disclosure, and leave to chance whether the mitigating explanation would ever be requested"), *aff'd,* 476 F.3d 1359 (Fed. Cir. 2007).



As also explained at the Pre-Trial Conference, Pronova refused to let ▮▮▮▮▮▮



(Dahl August 12, 2010 Dep. Tr. at 194:17-195:4 (emphasis added)).

Therefore, Pronova should not be allowed to attempt to explain away his conduct now, particularly given the fact that ▮▮▮▮▮▮

---

[3]      Indeed, as explained at the Pre-Trial Conference, the signal to noise ratio issue was not even raised until November 19, 2010 – the day Pronova served Dr. Sawchuk's Rebuttal Expert Report.

The Honorable Sue L. Robinson
March 22, 2011
Page 9

(Dahl August 12, 2010 Dep. Tr. at 195:5-18).

        In sum, the Court should not allow Pronova to give an explanation at trial that it cloaked in privilege during discovery.



(Dahl August 12, 2010 Dep. Tr. at 193:19-194:6 (emphasis added)).



                                                ***

---

[4]        Indeed, Dr. Sawchuk did not speak to Dr. Dahl.  *See* Sawchuk Dep. Tr. at 164:15-19.

The Honorable Sue L. Robinson
March 22, 2011
Page 10

In sum, because Dr. Sawchuk's signal to noise ratio theory is completely speculative, *post-hoc*, and litigation-inspired, he should not be allowed to present trial testimony on the issue.

Respectfully Submitted,

John C. Phillips, Jr. (No. 110)

cc:  All Counsel of Record (via CM/ECF and email)